# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

**PAULA LE**                                      **CIVIL ACTION**

**VERSUS**                                        **CASE NO. 17-833**

**UNUM INSURANCE COMPANY OF AMERICA**             **JUDGE: NJB**
                                                  **MAGISTRATE JUDGE: KWR**

## ORDER AND REASONS

This is an action brought by Plaintiff Paula Le ("Plaintiff") for denial of long-term disability benefits under an employee welfare benefit plan ("the plan"), written through her employer, the Opelousas General Health System ("OGHS"), and insured by Defendant Unum Life Insurance Company of America ("Defendant").[1] The parties have filed cross motions for summary judgment on the issue of whether the plan is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA").[2] Having considered the motions, the memoranda, the record, and the applicable law, the Court will grant Plaintiff's motion, deny Defendant's motion, and hold that the employee benefit plan established and maintained by OGHS is a "governmental plan," which is exempt from ERISA coverage pursuant to 29 U.S.C. § 1003(b)(1).

---

[1] Rec. Doc. 1-1.

[2] Rec. Docs. 11, 14. The parties refer to their respective motions as motions for summary judgment. However, the motions are in fact motions for partial summary judgment because they do not seek judgment on Plaintiff's underlying claims.

## I. Background

### A.    Factual Background

Plaintiff was involved in a serious vehicular collision on March 20, 2013, in which she sustained spinal injuries.[3] As a result of those injuries, Plaintiff underwent several surgical procedures performed by Dr. George Raymond Williams.[4] Plaintiff also underwent several procedures as a result of injuries to her hands and arms.[5] Since undergoing these surgeries, Plaintiff has been declared totally and permanently disabled.[6]

At the time of her injury, Plaintiff was insured under an employee benefit plan, written through her employer, OGHS, and insured by Defendant.[7] Plaintiff applied for benefits and was awarded long-term disability benefits beginning September 12, 2013.[8] On or about January 5, 2017, Plaintiff received notification that her disability benefits were being terminated, which Plaintiff alleges was done without just cause.[9]

### B.    Procedural Background

On May 10, 2017, Plaintiff filed a petition in the 27th Judicial District Court for the Parish of St. Landry, State of Louisiana, seeking damages as a result of the allegedly unreasonable denial

---

[3] Rec. Doc. 1-1 at 1.

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.* at 2.

of benefits under the plan.[10] In the petition, Plaintiff brings claims for alleged violations of Louisiana law, asserting that OGHS "operates as a political subdivision" and the plan is therefore exempt from coverage under ERISA.[11]

On June 28, 2017, Defendant removed the case to the United States District Court for the Western District of Louisiana.[12] In the Notice of Removal, Defendant asserts that this Court has original jurisdiction over this matter under 28 U.S.C. § 1331.[13] Specifically, Defendant contends that Plaintiff's claim is for benefits under an employee benefit plan governed by the ERISA and is completely preempted by ERISA.[14]

On September 27, 2017, Plaintiff filed a motion for summary judgment on the issue of whether the plan is governed by ERISA.[15] On October 18, 2017, Defendant filed an opposition to Plaintiff's motion for summary judgment.[16] On October 27, 2017, with leave of Court, Plaintiff filed a reply brief in further support of the motion for summary judgment.[17]

On October 2, 2017, Defendant filed a cross motion for summary judgment on the issue of whether the plan is governed by ERISA.[18] On October 24, 2017, Plaintiff filed an opposition to

---

[10] *Id.*

[11] *Id.* at 3.

[12] Rec. Doc. 1.

[13] *Id.* at 2.

[14] *Id.* at 3–4.

[15] Rec. Doc. 11.

[16] Rec. Doc. 22.

[17] Rec. Doc. 28.

[18] Rec. Doc. 16.

Defendant's motion for summary judgment.[19] On November 7, 2017, with leave of Court, Defendant filed a reply brief in further support of the motion for summary judgment.[20] On July 26, 2018, the case was reassigned to the undersigned Chief United States District Judge.[21]

## II. Parties' Arguments

### A.     *Plaintiff's Motion for Summary Judgment*

#### 1.     **Plaintiff's Arguments in Support of the Motion**

Plaintiff contends that her employer, OGHS, is a political subdivision of the State of Louisiana, and as such the plan is exempt from ERISA.[22] Therefore, Plaintiff submits that the plan is not an ERISA plan and moves for summary judgment on this issue.[23]

Plaintiff cites *Hightower v. Texas Hospital Association*, where the Fifth Circuit held that if a plan was "established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing," the plan was exempt from coverage under Title I of ERISA.[24] Here, Plaintiff asserts that the plan was established and maintained by OGHS for the benefit of the employees of Opelousas General Hospital employees.[25] Furthermore, Plaintiff argues that OGHS

---

[19] Rec. Doc. 23.

[20] Rec. Doc. 34.

[21] Rec. Doc. 37.

[22] Rec. Doc. 11-1 at 1.

[23] *Id.* at 2.

[24] *Id.* at 3 (citing 65 F.3d 443, 445 (5th Cir. 1995)).

[25] *Id.* at 3–4.

is a political subdivision of the State of Louisiana.[26]

Plaintiff contends that in *Bertrand v. Sandoz* the Louisiana Supreme Court held that Hospital District No. 2 ("HSD"), which Plaintiff contends later became OGHS, is a political subdivision of the State.[27] Plaintiff cites *Buller v. American United Life Ins. Co.*, a case decided by a district judge in the Western District of Louisiana, holding that OGHS is a political subdivision of the State and that a policy established by OGHS for its employees was exempt from ERISA coverage.[28] Plaintiff also cites *Andrus v. Unum Life Insurance Company of America*, a case decided by a district judge in the Eastern District of Louisiana, holding that OGHS is a political subdivision of the State and that the same policy at issue in this case was exempt from ERISA coverage.[29] Thus, Plaintiff asserts that "there can be no question that Opelousas General Health System is a governmental entity," and "any Plan or Policy established and/or maintained by Opelousas General Health System and/or Opelousas General Hospital is exempt under ERISA."[30] Accordingly, Plaintiff urges the Court to grant the motion for summary judgment and find that the plan is exempt from ERISA coverage.[31]

### 2.     Defendant's Arguments in Opposition to Plaintiff's Motion

In response, Defendant first states that it does not dispute that HSD is a political subdivision

---

[26] *Id.* at 4.

[27] *Id.* (citing 255 So. 2d 754 (La. 1971)).

[28] *Id.* (citing Rec. Docs. 11-16, 11-17, 11-18).

[29] *Id.* (citing 2017 WL 2364247 (E.D. La. May 31, 2017)).

[30] *Id.* at 7.

[31] *Id.*

of the State of Louisiana.[32] However, Defendant contends that OGHS is a trust established for a public purpose, and is not a political subdivision of the State of Louisiana.[33]

Defendant argues that the exhibits submitted in connection with this motion establish that OGHS became the operating entity of the hospital by way of a resolution transferring the management of the hospital from the Hospital Corporation of the Sisters Marianites of the Holy Cross to OGHS.[34] Defendant contends that OGHS did not become a political subdivision of the State by operating the hospital under the terms of this agreement.[35]

According to Defendant, HSD and OGHS are distinct legal entities, and only HSD is a political subdivision of the State.[36] Defendant asserts that Plaintiff's position is based on the erroneous premise that HSD and OGHS are the same legal entity, and Defendant argues there is no documentation showing that HSD ever became OGHS, as Plaintiff suggests.[37] Defendant contends that Plaintiff misreads the holding of the Louisiana Supreme Court in *Bertrand*.[38] According to Defendant, the Louisiana Supreme Court held that HSD was a political subdivision and that OGHS was a public trust, not a political subdivision.[39] Moreover, Defendant contends that HSD has no control over the employment or benefit operations of OGHS, and OGHS

---

[32] Rec. Doc. 22 at 2.

[33] *Id.*

[34] *Id.* at 2–3 (citing Rec. Doc. 11-5).

[35] *Id.* at 3.

[36] *Id.* at 4.

[37] *Id.*

[38] *Id.*

[39] *Id.* (citing 255 So. 2d at 763).

establishes and maintains its own employee benefit plan for its employees.[40]

Defendant contends that the district court cases cited by Plaintiff are merely interlocutory orders that should not be considered, even as persuasive authority, because Defendant alleges that the Louisiana Supreme Court has decided the question presented.[41] Defendant acknowledges that the issue as to whether the OGHS plan is governed by ERISA is a question that is to be determined under federal law.[42] However, Defendant posits that "it is appropriate for the highest court of the state to make a determination as to whether a specific entity is a political subdivision of the state."[43] Because there is no governing federal authority that is determinative of the issue, Defendant submits that this Court should look to the ruling of the Louisiana Supreme Court that definitively established that OGHS is not a political subdivision of the State.[44]

### 3. Plaintiff's Arguments in Further Support of the Motion

In the reply brief, Plaintiff contends that Defendant "ignores the factors which establish that OGHS is in fact a political subdivision or, at a minimum, an agency or instrumentality of a state or political subdivision."[45] According to Plaintiff, OGHS was created as a public trust and specifically refers to itself as an instrumentality of the State.[46] Plaintiff also asserts that OGHS is

---

[40] *Id.* at 5–6.

[41] *Id.* at 6.

[42] *Id.* at 8.

[43] *Id.*

[44] *Id.*

[45] Rec. Doc. 28 at 2.

[46] *Id.*

a "public corporation of the beneficiary" and subject to the "Public Contracts Law, Public Records Law, Public Meetings Law, Code of Ethics, and the Bond Validation Procedures Law."[47] Plaintiff notes that all of OGHS's meetings are open to the public.[48] Furthermore, Plaintiff states that the trust is exempt from all state and federal taxes and the property of the trust is considered public property.[49]

Plaintiff also disputes Defendant's assertion that OGHS operates independently from HSD and is not subject to its supervision and control.[50] According to Plaintiff, the Board of Trustees, which conducts the affairs of OGHS, is appointed by the HSD, and five of the nine trustees are commissioners of HSD.[51] Plaintiff contends that the Commission of HSD has the power to remove a trustee of OGHS for cause.[52] Moreover, Plaintiff asserts that the Commission must approve OGHS's bylaws, and the Commission has the power to veto the bylaws or propose changes to them.[53] Therefore, Plaintiff asserts that "[t]here is no question that control of OGHS is vested with Hospital Service District No. 2, and the District Commission controls the governing board of OGHS."[54]

According to Plaintiff, in *Bertrand* the Louisiana Supreme Court held that HSD could raise

---

[47] *Id.* (citing La. Rev. Stat. § 9:2343(D)).

[48] *Id.*

[49] *Id.* at 3 (citing La. Rev. Stat. § 9:2347(M)).

[50] *Id.*

[51] *Id.*

[52] *Id.* (citing La. Rev. Stat. § 9:2343(F)(3)).

[53] *Id.* (citing La. Rev. Stat. § 9:2343(C)).

[54] *Id.* at 3–4.

funds through a public trust without a vote from the citizens of St. Landry Parish.[55] However, Plaintiff notes that the Louisiana Supreme Court was not analyzing OGHS's status under ERISA and did not address whether the public trust was created by the State so as to constitute a political subdivision of the State.[56]

Finally, Plaintiff contends there is no legal authority to prevent the Court from reviewing the district court cases cited in Plaintiff's original brief.[57] At a minimum, Plaintiff argues "the interim ruling in *Andrus* is more relevant to this Court than the ruling in *Bertrand*, which is clearly distinguishable from the facts herein."[58]

**B.     *Defendant's Cross Motion for Summary Judgment***

**1.     Defendant's Arguments in Support of the Motion**

In the motion for summary judgment, Defendant again asserts that in *Bertrand* the Louisiana Supreme Court held that HSD was a political subdivision and that OGHS was a public trust, not a political subdivision.[59] Defendant notes that "OGHS's status as a political subdivision is currently at issue in pending litigation in the Eastern District of Louisiana involving the same Unum policy."[60] Defendant argues that the district court in *Andrus* incorrectly determined that OGHS was a political subdivision, but Defendant asserts that "[t]he district court's interim ruling

---

[55] *Id.* at 4 (citing 255 So. 2d at 763).

[56] *Id.*

[57] *Id.*

[58] *Id.* at 5.

[59] Rec. Doc. 14-1 at 6 (citing 255 So. 2d at 763).

[60] *Id.* at 7 (citing *Andrus v. Unum Life Insurance Company of America*, 2017 WL 2364247 (E.D. La. May 31, 2017)).

cannot be considered as binding or even persuasive authority for the proposition that the OGHS plan is exempt from coverage under ERISA."[61] Therefore, Defendant contends that this Court should find that OGHS is not a political subdivision and the plan is governed by ERISA.[62]

Defendant points to the application for group long term disability coverage that OGHS submitted to Defendant on July 16, 2009, where OGHS identified itself as a "Non-Profit Organization," not as a "Government Organization."[63] According to Defendant, the plan is only offered to employees who are directly employed by OGHS.[64]

Defendant asserts that in 1953 the St. Landry Parish Police Jury, a political subdivision of the State of Louisiana, adopted an ordinance creating HSD.[65] Defendant contends that HSD is statutorily designated as a political subdivision, which operates through a five member Board of Commissioners, and has the authority to incur debt, expropriate property, issue bonds, and levy taxes.[66] According to Defendant, HSD is also statutorily authorized to enter into an agreement with a hospital management firm to manage, operate, and administer a hospital for the benefit of the hospital service district.[67] Defendant also notes that HSD "has never operated the hospital directly, nor has it employed its personnel or established an employee welfare benefit plan for hospital

---

[61] *Id.*

[62] *Id.* at 8.

[63] *Id.* at 9 (citing Rec. Docs. 14-3, 14-5).

[64] *Id.*

[65] *Id.* at 10 (citing Rec. Doc. 14-8).

[66] *Id.* (citing La. Rev. Stat. §§ 46:1055; 46:1060).

[67] *Id.* (citing La. Rev. Stat. § 46:1055).

employees."[68] According to Defendant, in 1971, a trust indenture was entered with certain citizens of Opelousas, Louisiana, for the purpose of financing, operating, constructing, leasing, renting, managing, and administering the hospital facilities, which became known as the Opelousas General Health Authority and operates under the trade name OGHS.[69]

Defendant asserts that under Fifth Circuit law an entity is a political subdivision if it is either: "(1) created directly by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate."[70] Defendant contends that OGHS was not created directly by the State of Louisiana.[71] Although ERISA is governed by federal law, Defendant contends that the Fifth Circuit has recognized that "state law statutes and cases on the issue of whether an employer is considered to be a political subdivision are relevant to the inquiry when examining whether the entity was created directly by the state so as to constitute a department or an administrative arm of the government."[72] Again, Defendant argues that in *Bertrand* the Louisiana Supreme Court held that OGHS was a public trust, not a political subdivision.[73] Defendant also contends that this case is similar to *Shannon v. Shannon*, where the Seventh Circuit determined that a nonprofit corporation

---

[68] *Id.* at 11 (citing Rec. Doc. 14-8).

[69] *Id.* at 11 (citing Rec. Doc. 14-9).

[70] *Id.* at 15 (citing *Smith v. Regional Transit Authority*, 827 F.3d 412, 417 (5th Cir. 2016); *NLRB v. Natural Gas Utility District of Hawkins County*, 402 U.S. 600, 604–05 (1971)).

[71] *Id.*

[72] *Id.* at 15–16 (citing *N.L.R.B. v. Highview, Inc.*, 590 F.2d 174, 176 (5th Cir. 1979), *vacated in part on other grounds*, 595 F.2nd 339 (5th Cir. 1979)).

[73] *Id.* at 17 (citing 255 So. 2d at 763).

that operated a hospital pursuant to a lease with the City was created by ten incorporators "under the laws of Wisconsin as a private, non-stock, nonprofit corporation."[74]

Furthermore, Defendant contends that OGHS is not administered by individuals who are responsible to public officials or to the general public.[75] Defendant contends that HSD is the beneficiary of, but does not administer, the trust.[76] Defendant also cites *NLRB v. Highview, Inc.*, where the Fifth Circuit held that the political subdivision exemption of the National Labor Relations Act did not apply to a nonprofit hospital corporation which operated a nursing home located on county land.[77] Here, because OGHS operates as a distinct entity that is completely independent from HSD and is not administered by individuals who are responsible to public officials or the general electorate, Defendant contend that OGHS is not a political subdivision of the State.[78]

### 2. Plaintiff's Arguments in Opposition to Defendant's Motion

Plaintiff notes that she also filed a motion for summary judgment on the issue of whether the plan is exempt from ERISA coverage, but she asserts "there are some issues raised by Defendant's motion which warrant special attention."[79] Specifically, Plaintiff contends that Defendant's argument focuses solely on whether OGHS is a political subdivision of the State,

---

[74] *Id.* at 18–19 (quoting 965 F.2d 542, 546 (7th Cir. 1992)).

[75] *Id.* at 19.

[76] *Id.*

[77] *Id.* at 20 (citing 590 F.2d 174, 176 (5th Cir. 1979)).

[78] *Id.* at 23.

[79] Rec. Doc. 23 at 2.

without addressing whether OGHS is an agency or instrumentality of the State or of a political subdivision of the State.[80] For the reasons set forth in support of her motion for summary judgment, Plaintiff contends that OGHS is a political subdivision of the State.[81] Alternatively, even if OGHS is not a political subdivision of the State, Plaintiff contends that OGHS is an agency or instrumentality of HSD, which is undisputedly a political subdivision of the State.[82]

First, Plaintiff contends that OGHS is a political subdivision of the State because it was created directly by the State so as to constitute a department or administrative arm of the State.[83] Plaintiff asserts that because the hospital was created by the State, and later converted to a public trust to raise funds for expansion, it was established by the State, regardless of whether the public trust maintains it now.[84] Plaintiff notes that in *Bertrand* the Louisiana Supreme Court did not address whether the public trust was created by the State, so as to constitute a political subdivision of the State.[85] Plaintiff also contends that there are the following key distinctions between the facts of this case and *Shannon v. Shannon*, the Seventh Circuit Case cited by Defendant: (1) OGHS was created as a public trust and refers to itself as an instrumentality of the State; (2) all of OGHS's meetings and records are open to the public; (3) all of the trustees are selected by, and subject to

---

[80] *Id.*

[81] *Id.*

[82] *Id.* at 3.

[83] *Id.* at 5.

[84] *Id.* at 6.

[85] *Id.* at 7–8 (citing 255 So. 2d at 763).

removal by, the HSD commissioners.[86]

Second, Plaintiff contends that OGHS is a political subdivision of the State because it is administered by individuals who are responsible to public officials or to the general electorate.[87] Plaintiff contends that the trustees are public officials who are required to take an oath of office.[88] Moreover, Plaintiff asserts that neither OGHS's bylaws nor its trust indenture may be changed without consent of the HSD commission.[89] Therefore, Plaintiff argues that there is no question that OGHS is administered by individuals responsible to public officials, *i.e.* the Commissioners of HSD.[90] Plaintiff asserts that this case is similar to *StarTran, Inc. v. Occupational Safety & Health Commission*, where the Fifth Circuit held that a private corporation was a political subdivision because it was administered by individuals who are responsible to public officials.[91]

Alternatively, even if OGHS is not a political subdivision of the State, Plaintiff contends that OGHS is an agency or instrumentality of HSD, which is undisputedly a political subdivision of the State.[92] Plaintiff contends that OGHS meets the six factors test set forth by the Fifth Circuit for determining whether an entity is an agency or instrumentality of a governmental entity because: (1) it serves a governmental purpose and performs a governmental function by operating a hospital;

---

[86] *Id.* at 8–9 (citing 965 F.2d at 542).

[87] *Id.* at 9.

[88] *Id.* (citing La. Rec. Stat. § 9:2343(A)(1)).

[89] *Id.* at 11.

[90] *Id.*

[91] *Id.* at 13 (citing 608 F.3d 312, 324 (5th Cir. 2010)).

[92] *Id.* at 15.

(2) it performs its function on behalf of HSD pursuant to the trust indenture; (3) although there are private interests involved because the members of the Board of Trustees serve in their capacities as citizens, HSD has the powers and interests of an owner; (4) the Board of Trustees is appointed by HSD and five of the nine trustees are commissioners of HSD, evidencing that HSD controls OGHS; (5) the use of OGHS to manage, operate, and administer a hospital is legislatively authorized; and (6) OGHS has little financial autonomy because in reality it is managed by the Commissioners of HSD.[93] Accordingly, Plaintiff contends that OGHS is an agent or instrumentality of HSD, which is a political subdivision of the State.[94]

### 3. Defendant's Arguments in Further Support of the Motion

In the reply brief, Defendant first argues that Plaintiff is improperly attempting to introduce a new "claim" through the opposition to Defendant's motion for summary judgment.[95] Defendant notes that in the complaint Plaintiff alleged that OGHS was exempt from coverage under ERISA because it was a political subdivision, but Plaintiff did not allege that OGHS was an agency or instrumentality of the State.[96] Instead, Defendant asserts that Plaintiff raised this "claim" for the first time in opposition to the motion for summary judgment.[97] Defendant avers that it is well established in the Fifth Circuit that "a claim that is not raised in the complaint, but which is raised

---

[93] *Id.* at 15–19 (citing *Smith v. Regional Transit Authority*, 827 F. 3d 412 (5th Cir. 2017).

[94] *Id.* at 19.

[95] Rec. Doc. 34 at 6.

[96] *Id.*

[97] *Id.* at 7.

only in response to a motion for summary judgment is not properly before the Court."[98] Therefore, Defendant argues that the Court should "disregard the new claim."[99]

Alternatively, Defendant argues that OGHS does not meet the six-factor test set forth by the Fifth Circuit for determining whether an entity is an agency or instrumentality of a governmental entity because: (1) while OGHS benefits the public, it does not perform a traditional governmental function as the government is not required to provide hospital services; (2) OGHS does not operate the hospital on behalf of the HSD or the State as the district does not have any control over the operation of the hospital and no claim to OGHS's revenues; (3) neither the Police Jury nor HSD have the powers or interests of an owner; (4) HSD has no control or supervision over the day-to-day operations of OGHS; (5) a state statute authorizes the creation of public trusts but did not mandate the creation of OGHS; and (6) OGHS has complete financial autonomy from the Parish and State.[100]

"While HSD may have some involvement in the removal of a trustee for cause," Defendant contends that "there is absolutely no evidence that HSD has any control whatsoever over OGHS's day-to-day operation of the hospital or the provision of employee benefit plans for its employees."[101] Defendant asserts that OGHS operates the hospital independent from any governmental entity by paying its own employees, posting its own job openings, and providing its

---

[98] *Id.* (quoting *Cutrera v. Board of Supervisors*, 429 F.3d 108, 113 (5th Cir. 2005)).

[99] *Id.*

[100] *Id.* at 8–9.

[101] *Id.* at 9.

own benefits.[102] Defendant contends that OGHS does not receive any funding from a governmental entity, and has complete financial autonomy from HSD and the State.[103] Furthermore, while members of HSD sit on the Board of Trustees of OGHS, Defendant contends that "it is clearly not in their capacity as public officials because the HSD has no control over hospital operations."[104] Therefore, Defendant asserts that "[t]he balance of factors here, including the lack of State or Parish control over OGHS's operations, the lack of governmental funding, and the lack of indicia of governmental employment, all establish that OGHS is not an agency or instrumentality of the state or one of its political subdivisions."[105]

Defendant argues that OGHS was not created directly by the State, and instead was created by a written trust instrument.[106] Defendant concedes, as argued by Plaintiff, that OGHS's meetings and records are open to the public, the trust indenture and its bylaws must be approved by the HSD, OGHS does not file an annual Form 5500, and OGHS is subject to monitoring by a governmental agency.[107] However, Defendant asserts that these factors are not determinative of whether ERISA governs OGHS's employee benefit plan.[108] Furthermore, Defendant argues that "OGHS's tax-exempt status does not establish that it is a governmental entity as that status is

---

[102] *Id.*

[103] *Id.* at 9–10.

[104] *Id.* at 10.

[105] *Id.* at 11.

[106] *Id.*

[107] *Id.* at 13.

[108] *Id.*

granted to many non-profit organizations."[109]

Finally, Defendant argues that "OGHS is not administered by individuals who are responsible to public officials or the general electorate, as claimed by plaintiff, simply because the board of directors must include elected or appointed public officials."[110] Defendant asserts that "HSD and OGHS are distinct legal entities and this distinction cannot be disregarded because the class of members of each happens to be coextensive."[111] Specifically, Defendant notes that HSD does not manage OGHS's operations, OGHS has unfettered discretion in carrying on its day-to-day operations, and OGHS's finances are completely separate from HSD.[112] Defendant contends that one of Congress's primary reasons for exempting governmental plans from the funding requirements of ERISA was "the ability of the governmental entities to fulfill their obligations to employees through their taxing powers" as a substitute for minimum funding standards and plan termination insurance.[113] Because OGHS has no authority to levy taxes, Defendant avers that finding that the plan is exempt from ERISA would relieve "OGHS's privately funded employee benefit plan from the mandatory protections that Congress requires ERISA plans to provide, effectively leaving employees with no remedy should OGHS ever encounter financial difficulties."[114]

---

[109] *Id.*

[110] *Id.* at 14.

[111] *Id.*

[112] *Id.*

[113] *Id.* (quoting *Rose vs. Long Island R.R. Pension Plan*, 828 F.2d 910 (2nd Cir. 1987)).

[114] *Id.* at 15.

# III. Legal Standard

## A. *Legal Standard on a Motion for Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[115] When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[116] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[117] If the record, as a whole, could not lead a rational trier of fact to find for the nonmoving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[118]

On a motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[119] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense,

---

[115] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[116] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[117] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[118] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[119] *Celotex,* 477 U.S. at 323.

or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[120] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[121] In doing so, the nonmoving party may not rest upon mere allegations or denials in its pleadings, but rather must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[122] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[123] There is no genuine issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[124] Furthermore, it is well-established that "[u]nauthenticated documents are improper as summary judgment evidence."[125]

---

[120] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (citing *Little v. Liquid Air Corp*., 939 F.2d 1293, 1299 (5th Cir. 1991)).

[121] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[122] *Morris*, 144 F.3d at 380 (citing *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992); *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[123] *Little*, 37 F.3d at 1075.

[124] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citing *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).

[125] *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).

### B. Legal Standard on ERISA Coverage and Exemptions

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans."[126] Section 514(a) of ERISA states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . ."[127] Section 502(a) of ERISA sets forth the exclusive grounds for relief under ERISA.[128] "Hence, 'causes of action within the scope of the civil enforcement provisions of § 502(a) [are] removable to federal court.'"[129] Nevertheless, although ERISA's scope is expansive, certain types of employee benefit plans are excluded from coverage.

29 U.S.C. §1003(b)(1) provides that ERISA "shall not" apply to any employee benefit plan if such plan is a "governmental plan." ERISA defines a "governmental plan" as follows:

> A plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of the foregoing.[130]

Accordingly, the governmental plan exemption applies to a plan that was either established or maintained by an entity that falls within the statutory language.[131]

---

[126] *McAteer v. Silverleaf Resorts, Inc.*, 514 F.3d 411, 417 (5th Cir. 2008) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004)).

[127] 29 U.S.C. § 1144(a).

[128] 29 U.S.C. § 1132(a).

[129] *Davila*, 542 U.S. at 209.

[130] 29 U.S.C. § 1002(32). There is no statutory language in ERISA that defines the terms "political subdivision," "agency" or "instrumentality."

[131] *Hightower v. Texas Hospital Assoc.*, 65 F.3d 443, 451 (5th Cir. 1995).

## IV. Analysis

The parties do not dispute that OGHS obtained the group long-term disability policy for its eligible employees from Defendant and that Plaintiff was insured under the policy. The material facts surrounding the creation of OGHS also are undisputed.[132]

The parties dispute whether the plan is exempt from coverage under the governmental plan exemption. As noted above, the governmental plan exemption applies to a political subdivision of the state or by any agency or instrumentality of a political subdivision.[133] In the petition and in Plaintiff's motion for summary judgment, she only argued that OGHS is a political subdivision of the State.[134] However, in opposition to Defendant's motion for summary judgment, Plaintiff raises an alternative argument that OGHS is an agency or instrumentality of a political subdivision.[135] In its reply brief, Defendant contends that the Court should not consider Plaintiff's argument that OGHS is an agency or instrumentality, contending it is a new "claim" not raised in the petition[136]

It is well established in the Fifth Circuit that "a claim that is not raised in the complaint, but which is raised only in response to a motion for summary judgment is not properly before the court."[137] In *Fisher v. Metropolitan Life Insurance Co.*, the Fifth Circuit found that the plaintiff's

---

[132] In the opening brief, Plaintiff suggested that HSD later became OGHS. However, in subsequent briefs, Plaintiff does not dispute that HSD and OGHS are distinct legal entities.

[133] 29 U.S.C. § 1002(32).

[134] *See* Rec. Docs. 1-1, 11.

[135] *See* Rec. Doc. 23.

[136] Rec. Doc. 34 at 6.

[137] *Cutrera v. Board of Supervisors*, 429 F.3d 108, 113 (5th Cir. 2005) (*Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)).

claim that his insurer improperly calculated the benefits he received under ERISA was not properly before the court because it was raised in response to a motion for summary judgment rather than in the complaint.[138]

Federal Rule of Civil Procedure 8(a)(2) requires that a plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."[139] Although a complaint need not contain detailed factual allegations it is "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[140]

In the petition, which Plaintiff originally filed in state court, Plaintiff claims that Defendant violated Louisiana law by unreasonably "terminating Plaintiff's benefits without just cause" and arbitrarily and capriciously failing to timely pay benefits to Plaintiff under the terms of the policy.[141] The petition also alleges that OGHS "operates as a political subdivision" and the plan is therefore exempt from coverage under ERISA.[142] Plaintiff's claims, i.e. causes of action, are for the alleged violations of state law arising out of Defendant allegedly terminating Plaintiff's benefits without just cause and failing to timely pay benefits under the terms of the policy.

---

[138] *Fisher*, 895 F.2d at 1078.

[139] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

[140] *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal quotation marks and brackets omitted)).

[141] Rec. Doc. 1-1 at 1–2.

[142] *Id.* at 3.

Plaintiff's argument that the plan is not covered by ERISA because OGHS is a "political subdivision" is not a "claim" for relief. Therefore, Defendant's assertion that the Court should not consider Plaintiff's alternative argument is unavailing because this alternative argument is not a "claim" that must be plead under Rule 8(a)(2). Accordingly, the Court will consider both Plaintiff's argument that OGHS is a political subdivision of the State and her alternative argument that OGHS is an agency or instrumentality of a political subdivision.

### A.     *Whether OGHS is a Political Subdivision of the State*

Plaintiff argues that OGHS is a political subdivision of the State of Louisiana.[143] Plaintiff contends that OGHS was created directly by the State so as to constitute a department or administrative arm of the State.[144] Plaintiff also asserts that OGHS is a political subdivision of the State because it is administered by individuals who are responsible to public officials or to the general electorate.[145] Defendant does not dispute that HSD is a political subdivision of the State of Louisiana.[146] However, Defendant contends that Plaintiff's employer, OGHS, is a trust established for a public purpose and is not a political subdivision of the State of Louisiana.[147]

The Fifth Circuit has adopted the test set forth by the United States Supreme Court in *NLRB v. Natural Gas Utility District of Hawkins County* for the purpose of discerning whether an entity

---

[143] Rec. Doc. 11-1 at 4.

[144] Rec. Doc. 23 at 5.

[145] *Id.* at 9.

[146] Rec. Doc. 22 at 2.

[147] *Id.*

is a political subdivision under ERISA.[148] Under the *Hawkins* test, an entity is a political

subdivision if it is either "(1) created directly by the state, so as to constitute departments or

administrative arms of the government, or (2) administered by individuals who are responsible to

public officials or to the general electorate."[149] This is a disjunctive test, and therefore, Plaintiff

may establish that OGHS fits the definition of a political subdivision under either prong.[150]

To determine whether OGHS is a political subdivision of the State, the Court must examine

the facts surrounding the creation of OGHS and its governance structure, which are undisputed.[151]

On July 6, 1953, the St. Landry Parish Police Jury, the governing body of St. Landry Parish that

later became known as the St. Landry Parish Council, created HSD.[152] HSD is statutorily

authorized to enter into an agreement with a third party for the third party to manage and operate

a hospital for the benefit of the district.[153] On September 21, 1954, HSD proposed, and voters

approved, a bond issue for $350,000 to be financed by a one-mill ad valorem tax.[154] With these

funds, some donations, and a small allotment from State severance taxes, grounds were acquired

and the hospital building was erected.[155] HSD then entered into a lease agreement with the Hospital

---

[148] *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016) (citing 402 U.S. 600 (1971)).

[149] *Id.*

[150] *Id.*

[151] In the opening brief, Plaintiff suggested that HSD later became OGHS. However, in subsequent briefs, Plaintiff does not dispute that HSD and OGHS are distinct legal entities.

[152] *Bertrand v. Sandoz*, 255 So. 2d 754, 756 (La. 1971).

[153] La. Rev. Stat. § 46:1055.

[154] *Bertrand*, 255 So. 2d at 756.

[155] *Id.*

Corporation of the Sisters of Marianites of the Holy Cross for it to operate the newly constructed hospital.[156] Due to the hospital's success, "plans were formulated by the district in 1970 to provide for modernization and expansion, including a new building or wing adjoining the existing facility."[157] "The bond proposal was submitted to the voters of the district on January 12, 1971, and it was soundly defeated."[158]

In response, members of the Board of Commissioners of HSD created a public trust called the Opelousas General Hospital Authority, which later began to operate under the trade name OGHS.[159] The trust was created "for the use and benefit" of HSD "to finance, operate, construct, lease, rent, manage and administer hospital facilities."[160] Through the trust, "revenue bonds supported entirely by self-generated Hospital revenues [were] used to finance the needed renovation and expansion project."[161] The Trust Indenture further provides that the trust is "a public instrumentality of the state or a subdivision or agency thereof."[162] On September 25, 1986, the Trust Indenture was amended to include Article IV, section 4.1, which states, "The purpose of the Trust shall constitute authorized public functions or purposes held to be an essential public

---

[156] *Id.*

[157] *Id.* at 757.

[158] *Id.*

[159] *Id.* On January 22, 2004, OGHA filed a "Certificate of Registration of Assumed Business Name" providing that OGHA would do business as "Opelousas General Health System." *Billeaudeau v. Opelousas General Hospital Authority*, 17-735 (La. App. 3 Cir. 2/7/18); 239 So. 3d 306, 311.

[160] Rec. Doc. 11-4 at 1.

[161] *Bertrand*, 255 So. 2d at 757.

[162] Rec. Doc. 11-4 at 1.

function conducted in the public interest. . . ."[163]

The five Commissioners of HSD, appointed to that position by the Parish Council, became the five original members of the Board of Trustees of OGHS.[164] An Amended Trust Indenture later increased the number of Trustees of OGHS to nine, but the five Commissioners of HSD remained Trustees and the additional Trustees are appointed by the Commissioners.[165] The Trust Indenture provides that officers of the Commission of HSD and the Board of Directors of OGHS are identical.[166]

The Commission of HSD, as the governing authority of the beneficiary of the Trust, has the power to remove a Trustee of OGHS for cause.[167] The Board of Trustees of OGHS is required to adopt bylaws, but the bylaws may be vetoed by the Commission.[168] Under Louisiana law, meetings of the OGHS Board of Trustees must be open to the public.[169] Louisiana law also required that the Trust Indenture be approved by the Commission of HSD and by the Louisiana State Bond

---

[163] *Billeaudeau*, 239 So. 3d at 317 (quoting La. Rev. Stat. § 9:2341(D)).

[164] *Bertrand*, 255 So. 2d at 758. The original Trust Indenture states "the Trustees of this Trust shall be . . . the persons presently constituting the members of the governing Commission of [HSD]." Rec. Doc. 11-4 at 4.

[165] Rec. Doc. 11-13 at 3.

[166] Rec. Doc. 11-4 at 4–5 ("The person who shall be the Chairman of the governing body (Commission) of the Hospital Service District No. 2, shall become automatically the Chairman of the Trustees and shall preside at all meetings and perform other duties designated by the Trustees. The person who shall be the Vice Chairman of the Hospital Service District No. 2 shall be automatically the Vice Chairman of the Trustees. . . . The person who shall be the Secretary of the Hospital Service District No. 2 shall act as Secretary of the Trustees.").

[167] La. Rev. Stat. § 9:2343(F)(3) ("In the case of persons appointed by the governing authority of the beneficiary or by the governor, as the case may be, such persons shall be appointed for a term not in excess of six years, and shall be subject to removal for cause, as aforesaid, by or at the will of the beneficiary.")

[168] La. Rev. Stat. § 9:2341(C) ("[T]he governing authority of the beneficiary shall have the power to veto all or part of the proposed bylaws.")

[169] La. Rev. Stat. § 9:2343(D) ("Meetings of the trustees of all public trusts shall be open to the public and the records of all public trusts shall be public records to the same extent as is required by law for the beneficiary.")

Commission.[170]

Considering these same facts and the same plan at issue here, in *Andrus v. Unum Life Insurance Company of America* a district judge in the Eastern District of Louisiana found that "OGHS is administered by individuals who are responsible to public officials, namely the Commissioners of the Hospital Service District No. 2, which is a political subdivision."[171] Accordingly, that court concluded that OGHS is a political subdivision of the State of Louisiana for the purposes of ERISA because it is "administered by individuals who are responsible to public officials or the general electorate."[172]

Defendant contends that this Court should not consider *Andrus* even as persuasive authority because Defendant asserts that the Louisiana Supreme Court has decided the question presented.[173] In *Bertrand v. Sandoz*, the Louisiana Supreme Court reviewed a state trial court's order dismissing a class action lawsuit seeking to have the trust through which OGHS was formed declared invalid; and, alternatively, that the trust be prohibited from issuing revenue bonds without an election by a majority of the taxpayers of the district.[174] The Louisiana Supreme Court found that HSD was a "subdivision of the state within the meaning of the constitution, the Public Trust Act and the police

---

[170] La. Rev. Stat. § 9:2341(A) (A public trust may be created with the "(1) express approval of the governor and two-thirds of the elected members of each house of the legislature if the state of Louisiana or any state agency is the beneficiary; (2) express approval of a majority of the membership of the governing authority of the beneficiary and the State Bond Commission or its successor if a parish or municipality or a political or governmental subdivision thereof is the beneficiary; and (3) express approval of a majority of the membership of the governing authority of the beneficiary and the State Bond Commission or its successor, in all other cases." (emphasis added)).

[171] 2017 WL 2364247, at *5 (E.D. La. May 31, 2017)).

[172] *Id.*

[173] Rec. Doc. 22 at 6.

[174] *Bertrand*, 255 So. 2d at 758.

jury ordinance."[175] Therefore, the Louisiana Supreme Court held that HSD was capable of being designated as beneficiary of a public trust.[176] Furthermore, the Louisiana Supreme Court held OGHS was not a political subdivision of the State but instead was a valid public trust that could "issue revenue bonds without an election by a majority of the taxpayers of the district."[177]

Although Defendant acknowledges that federal law controls the issue of whether OGHS is a political subdivision for purpose of ERISA preemption, Defendant contends that the Court should rely on *Bertrand* because it "definitively established" that OGHS is not a political subdivision and there is no governing federal authority that is determinative of the issue.[178] However, even if Louisiana law were determinative of this issue, Louisiana courts have recognized that a subsequent amendment to the Public Trust Act calls the *Bertrand* court's holding that OGHS is not a political subdivision into question.

In *Billeaudeau v. Opelousas General Hospital Authority* the Louisiana Third Circuit Court of Appeal noted that the Public Trust Act was amended in 1978, after the Louisiana Supreme Court decided *Bertrand*, to provide that "[a]ll public trusts hereafter created or amended under this Chapter shall constitute public corporations of the beneficiary."[179] The Louisiana Third Circuit held that "the 1986 and 1991 amendments to the Hospital Service District No. 2 of St. Landry's Trust Indenture brought the OGH[A] within the scope of the legislative amendments throughout

---

[175] *Id.* at 758–59.

[176] *Id.* at 759.

[177] *Id.* at 763–64.

[178] Rec. Doc. 22 at 6.

[179] 239 So. 3d at 317.

the years," making OGHA, which operates under the trade name OGHS, a "public corporation" and political subdivision under the Louisiana Governmental Claims Act.[180]

As discussed above, neither OGHS's bylaws nor its Trust Indenture may be changed without the consent of the Commission of HSD, which is appointed by the Parish Council. Furthermore, five of the members of the Board of Trustees for OGHS are also Commissioners of HSD, the four additional Trustees are appointed by the Commission, and officers of the Commission of HSD and the Board of Directors of OGHS are identical. Therefore, the Court finds that OGHS is a political subdivision of the State of Louisiana for the purposes of ERISA because it is "administered by individuals who are responsible to public officials or the general electorate." Because the Court finds OGHS is a political subdivision of the State of Louisiana, the employee benefit plan established and maintained by OGHS is a "governmental plan," which is exempt from ERISA coverage pursuant to 29 U.S.C. § 1003(b)(1).[181]

**B.      *Whether OGHS is an Agency or Instrumentality of a Political Subdivision of the State***

Alternatively, even if OGHS is not a political subdivision of the State, Plaintiff contends that OGHS is an agency or instrumentality of HSD, which the parties agree is a political subdivision of the State.[182] In opposition, Defendant argues that OGHS does not meet the six-factor test set forth by the Fifth Circuit for determining whether an entity is an agency or

---

[180] *Id.*

[181] Because the Court finds that OGHS is administered by individuals who are responsible to public officials or to the general electorate, it will not consider Plaintiff's argument that OGHS was created directly by the State.

[182] Rec. Doc. 23 at 15.

instrumentality of a governmental entity.[183]

ERISA does not define "agency or instrumentality" for the purposes of determining whether a plan is exempt as a governmental plan.[184] The Fifth Circuit has adopted the six-factor test provided in Internal Revenue Service Revenue Ruling 57-128, as refined by Internal Revenue Service Revenue Ruling 89-49, as the appropriate test for determining whether an entity is an agency or instrumentality of a governmental entity.[185] In Revenue Ruling 57-128, the IRS set forth the following six factors to be considered in determining whether a particular entity is an agency or instrumentality of a state or political subdivision:

(1) whether it is used for a governmental purpose and performs a governmental function; (2) whether performance of its function is on behalf of one or more states or political subdivisions; (3) whether there are any private interests involved, or whether the states or political subdivisions involved have the powers and interests of an owner; (4) whether control and supervision of the organization is vested in public authority or authorities; (5) if express or implied statutory or other authority is necessary for the creation and/or use of such an instrumentality, and whether such authority exists; and (6) the degree of financial autonomy and the source of its operating expenses.[186]

Revenue Ruling 89-49 refined Revenue Rule 57-128, stating:

One of the most important factors to be considered in determining whether an organization is an agency or instrumentality of the United States or any state or political subdivision is the degree of control that the federal or state government has over the organization's everyday operations. Other factors include: (1) whether there is specific legislation creating the organization; (2) the source of funds for the organization; (3) the manner in which the organization's trustees or operating board are selected; and (4) whether the applicable governmental unit considers the employees of the organization to be employees of the applicable governmental unit.

---

[183] Rec. Doc. 34 at 8–9.

[184] *Smith*, 827 F.3d at 417–18.

[185] *Id.* at 420.

[186] *Id.* at 418 (quoting Rev. Rul. 57–128, 1957–1 C.B. 311).

> Although all of the above factors are considered in determining whether an organization is an agency of a government, the mere satisfaction of one or all of the factors is not necessarily determinative.[187]

While the Court must consider all six factors, no single factor is determinative.[188] The court must determine whether the factors, as a whole, weigh in favor or against a finding that a specific entity is an agency or instrument of a state or political subdivision.[189] Therefore, the Court considers the factors provided in these Revenue Rulings to determine whether OGHS is either an agency or instrumentality of HSD.

First, the Court considers whether OGHS is used for a governmental purpose and performs a governmental function. The Trust Indenture provides that the trust was created for a "public purpose . . . as a public instrumentality of the state or a subdivision or agency thereof."[190] On September 25, 1986, the Trust Indenture was amended to include Article IV, section 4.1, which states, "The purpose of the Trust shall constitute authorized public functions or purposes held to be an essential public function conducted in the public interest. . . ."[191] Furthermore, Louisiana's Public Trust Act states that a public trust may be created "to issue obligations and to provide funds for the furtherance and accomplishment of any authorized public functions,"[192] such as "hospital, medical, health, nursery care, nursing care, clinical, ambulance, laboratory and related services

---

[187] *Id.* at 419 (quoting Rev. Rul. 89–49, 1989–1 C.B. 117).

[188] *Id.*

[189] *Id.*

[190] Rec. Doc. 11-4 at 1.

[191] *Billeaudeau*, 239 So. 3d at 317 (quoting La. Rev. Stat. § 9:2341(D)).

[192] La. Rev. Stat. § 9:2341(A).

and entities."[193] Defendant argues that providing hospital services is not a "traditional government function."[194] However, the Public Trust Act expressly provides that a public trust may be created for the "public function" of administering hospital and medical services. Accordingly, the Court finds this factor weighs in favor of finding OGHS is an agency or instrumentality of HSD.

Second, the Court considers whether performance of OGHS's function is on behalf of a political subdivision of the State. It is clear that OGHS performs its functions on behalf of HSD. HSD is the beneficiary of the trust, which was created "for the use and benefit" of HSD "to finance, operate, construct, lease, rent, manage and administer hospital facilities."[195] Defendant's argument that OGHS does not operate the hospital on behalf of the HSD because HSD does not have any control over the operation of the hospital is contradicted by the very language of the Trust Indenture, which provides that HSD is the beneficiary of the trust.[196] Therefore, this factor weighs in favor of finding that OGHS is an agency or instrumentality of HSD.

Third, the Court examines whether there are any private interests involved, or whether HSD has the powers and interests of an owner. Plaintiff acknowledges that there are private interests involved because the members of the Board of Trustees serve in their capacities as citizens, but contends that HSD has the interest of an owner.[197] The January 25, 1972 Resolution of HSD transferred "the management and supervision of the Opelousas General Hospital" to "the

---

[193] La. Rev. Stat. § 9:2341(B)(1)(a).

[194] Rec. Doc. 34 at 8.

[195] Rec. Doc. 11-4 at 1.

[196] Rec. Doc. 34 at 8.

[197] Rec. Doc. 23 at 17.

Opelousas General Hospital Authority, a Public Trust, effective the 25th day of February, 1972, pursuant to the terms and conditions of a Management Contract executed by and between the Hospital Service District No. 2 of St. Landry Parish, Louisiana, as *Owner* and the Opelousas General Hospital Authority, a Public Trust, as Manager."[198] Furthermore, HSD appoints and removes members of the OGHS Board of Trustees, a majority of whom are Commissioners of HSD. Accordingly, this factor weighs in favor of finding OGHS is an agency or instrumentality of HSD.

Fourth, the Court considers whether control and supervision of the organization is vested in public authority. Defendant contends that HSD has no control or supervision over the day-to-day operations of OGHS.[199] Plaintiff does not dispute that OGHS generates its own funding, hires its own employees, and provides its own benefits. The Trust Indenture provides HSD has no "authority, power or right, whatsoever, to do or transact any business for, or on behalf of, or binding upon the Trustees or upon the Trust Estate."[200] Conversely, as discussed above, the Board of Trustees is appointed by HSD, and five of the nine Trustees are Commissioners of HSD. Therefore, although the OGHS and HSD are distinct legal entities and HSD has no authority to do business on behalf of OGHS, control of OGHS is in fact vested with HSD as the Commission controls the Board of Trustees of OGHS. Therefore, the Court concludes that this factor weighs in favor of finding OGHS is an agency or instrumentality of HSD.

---

[198] Rec. Doc. 11-5 at 1 (emphasis added).

[199] Rec. Doc. 34 at 8–9.

[200] Rec. Doc. 11-4 at 11.

Fifth, the Court must consider if express or implied statutory or other authority is necessary for the creation and/or use of such an instrumentality.[201] Defendant acknowledges that a state statute authorizes the creation of public trusts, but no state law mandated the creation of OGHS.[202] The statute governing HSD authorizes it "to enter into lease agreements with recognized and duly constituted nonprofit associations which are primarily engaged in the operation of hospitals."[203] An act of the legislature did not specifically bring OGHS into existence, but Louisiana law authorizes the creation of public trusts, such as OGHS, "for the furtherance and accomplishment of any authorized public functions"[204] such as hospitals.[205] Accordingly, this factor weighs in favor of finding OGHS is an agency or instrumentality of HSD.

Sixth, the Court must consider the degree of financial autonomy. Under the terms of the Trust Indenture, all debts of OGHS are payable solely from the Trust Estate.[206] The Trust Indenture provides HSD, as beneficiary, "shall have no liability for any bonds, notes, or indebtedness of any type whatsoever of the Trust" and will have no "liability for costs incurred in the operation of the Trust, or for any actions or omission of the Trustees or others representing the Trust."[207] Further, HSD has "no legal title, claim or right to the Trust Estate, its income, or to any part thereof, or to

---

[201] Rec. Doc. 34 at 9.

[202] *Id.*

[203] La. Rev. Stat. § 46:1055(A)(9).

[204] La. Rev. Stat. § 9:2341(A).

[205] La. Rev. Stat. § 9:2341(B)(1)(a).

[206] Rec. Doc. 11-4 at 11.

[207] *Id.*

demand or require any partition or distribution thereof."[208] Therefore, OGHS is financially autonomous from HSD, and this factor weighs against finding OGHS is an agency or instrumentality of a political subdivision.

Considering that five of the six factors weigh in favor of finding that OGHS is an agent or instrumentality of HSD, the Court concludes that OGHS is an agency or instrumentality of HSD, which is undisputedly a political subdivision of the State of Louisiana. Therefore, the Court finds the employee benefit plan is a governmental plan exempt from ERISA's coverage pursuant to 29 U.S.C. § 1003(b)(1).

## V. Conclusion

Based on the foregoing, the Court finds that the employee benefit plan is a governmental plan exempt from ERISA's coverage pursuant to 29 U.S.C. § 1003(b)(1) because OGHS is a political subdivision of the State of Louisiana or, alternatively, because OGHS is an agency or instrumentality of the HSD, which is a political subdivision of the State of Louisiana. Therefore, the Court lacks federal question subject matter jurisdiction because ERISA does not preempt the state law claims raised by Plaintiff.

In the Notice of Removal, Defendant asserted that this Court has federal question jurisdiction over this matter under 28 U.S.C. § 1331 because Defendant argued that ERISA completely preempted Plaintiff's state law claims.[209] Defendant did not raise whether the Court has federal diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331. "Federal

---

[208] *Id.*

[209] *Id.* at 2.

courts are duty-bound to examine the basis of subject matter jurisdiction *sua sponte*."[210] Accordingly, the Court will require the parties to submit briefing regarding whether subject matter jurisdiction exists over the case on another basis within fourteen days of this Order. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's "Motion for Summary Judgment"[211] on the issue of whether the plan is governed by ERISA is **GRANTED.**

**IT IS FURTHER ORDERED** Defendant's "Motion for Summary Judgment"[212] on the issue of whether the plan is governed by ERISA is **DENIED.**

**IT IS FURTHER ORDERED** that the parties must submit briefing regarding whether subject matter jurisdiction exists over the case, on a ground not yet presented to the Court, within fourteen (14) days of this Order.

**NEW ORLEANS, LOUISIANA**, this ___21st___ day of August, 2018.

**NANNETTE JOLIVETTE BROWN
CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

---

[210] *Union Planters Bank Nat. Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004).

[211] Rec. Doc. 11.

[212] Rec. Doc. 14.